**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | |
|---|---|
| DEYANARA MOJICA HICHEZ, Individually and as Personal Representative of the Estate of RAFAEL MENA PEREZ, her Husband, and as parent and next friend of their minor children, L. M. M., D. M. M. and D. M. M., | )<br>)<br>)<br>)<br>)<br>)<br>) |
| | ) C.A. No. N19C-10-273 KMM |
| Plaintiffs, | )<br>) |
| v. | )<br>) |
| DELMARVA POWER & LIGHT COMPANY, PEPCO HOLDINGS, LLC, ASPLUNDH TREE EXPERT CO., ASPLUNDH TREE EXPERT, LLC, VERIZON DELAWARE, LLC, and COMCAST OF DELMARVA, LLC, | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

Date submitted: June 12, 2026
Date decided: July 24, 2026

***Order on Motion for Reargument—punitive damages***

Defendants Delmarva Power & Light Company ("Delmarva"), Verizon

Delaware, LLC ("Verizon"), and Comcast of Delmarva, LLC ("Comcast" and

collectively "Defendants") moved for summary judgment on Plaintiffs' claim for

punitive damages. After oral argument, the Court granted the motion. Plaintiffs

filed a Motion for Reargument[1] (the "Motion"). For the reasons discussed below, the Motion is **DENIED**.

## *Background*

1. Rafael Mena Perez was employed by a tree trimming company, which was hired by Delmarva to trim a tree around its electrical lines. Mr. Mena Perez was one of the crew members assigned to trim the subject tree on August 2, 2018. While Mr. Mena Perez was in the tree, he was electrocuted and died. Plaintiffs' theory is that due to Defendants' failures for years to maintain the vegetation around the lines and maintain the poles to which the lines were attached, in a wind gust, the electrical line swung and hit the tree, electrifying it and electrocuting Mr. Mena Perez.

2. Plaintiffs—Mr. Mena Perez's estate and family—filed this action against Delmarva, Verizon, and Comcast. Plaintiffs' claims center on Defendants' alleged failure to properly maintain their equipment and failure to warn of hazards.

3. After the close of discovery, Defendants moved for summary judgment on multiple grounds, including on Plaintiffs' claim for punitive damages. Plaintiffs opposed the motion arguing that they developed a factual record sufficient to submit the question of punitive damages to a jury based on the Defendants' failure to properly maintain and inspect their respective electrical and communication lines and years of failing to maintain the vegetation around those lines.

---

[1] D.I. 558.

4. Defendants countered that the record supported a finding of only passive negligence, at best, which required Plaintiffs to overcome a substantial burden for the punitive damages claim to survive. Defendants contended that the record, viewed in the light most favorable to Plaintiffs, did not overcome that substantial burden, and accordingly they were entitled to summary judgment.

5. The Court issued its oral ruling on punitive damages on May 22, 2026 (the "Ruling").[2] Noting that for purposes of this motion, Defendants accepted Plaintiffs' factual premise regarding how the injury occurred and Defendants' actions or inactions. The Court addressed the allegations against each Defendant and found that the record did not support a finding of conscious disregard or an "I don't care" attitude and granted summary judgment in Defendants' favor. Plaintiffs filed the Motion.

### *Legal Standards*

6. The standard for a motion for reargument under Rule 59(e) is well-settled in Delaware. The moving party bears a "heavy burden" to demonstrate that "the Court has overlooked a controlling precedent or legal principles, or the Court has misapprehended the law or facts such as would have changed the outcome of the

---

[2] D.I. 548. At the request of Plaintiffs, the Court issued a letter opinion reflecting the oral ruling. D.I. 555.

underlying decision."[3] A motion for reargument is not for raising new arguments (or "stringing out the length of time for making an argument") or rehashing arguments previously made.[4] "Such tactics frustrate the efficient use of judicial resources, place the opposing party in an unfair position, and stymie 'the orderly process of reaching closure on the issues.'"[5]

7. "The availability of punitive damages turns on whether Plaintiff[s]…established a prima facie case that [Defendants] exhibited a willful and wanton disregard for the safety of others."[6] "For a defendant's conduct to be found willful or wanton, the conduct must reflect a 'conscious indifference' or 'I don't care' attitude."[7] "Without 'evidence of egregious conduct of an intentional or reckless nature'" a claim for punitive damages cannot survive.[8] "Where the claim…is based on an error of judgment, a form of passive negligence, the plaintiff's burden is substantial. It must be shown that the precise harm which eventuated must have been reasonably apparent but consciously ignored in the formulation of the

---

[3] *Bd. Of Managers of the Del. Crim. Justice Info. Sys. v. Gannett Co.*, 2003 WL 1579170, at *1 (Del. Super. Jan. 17, 2003); *Milton v. Alfred I. duPont Hospital for Children*, 2024 WL 4524850, at *1 (Del. Super. Oct. 17, 2024).

[4] *Bd. Of Managers*, 2003 WL 1579170, at *1; *Feenix Payment Sys., LLC v. Blum*, 2024 WL 3424038, at *1 (Del. Super. July 16, 2024); *Kennedy v. Invacare Corp.*, 2006 WL 488590, at *1 (Del. Super. Jan. 31, 2006).

[5] *Feenix*, 2024 WL 3424038, at *1 (quoting *Plummer v. Sherman*, 2004 WL 63414, at *2 (Del. Super. Jan. 14, 2004)).

[6] *Estate of Rae v. Murphy*, 956 A.2d 1266, 1270 (Del. 2008) (cleaned up).

[7] *Porter v. Turner*, 954 A.2d 308, 312 (Del. 2008) (cleaned up).

[8] *Marydale Pres. Assocs., LLC v. Leon N. Weiner & Assocs., Inc.*, 2022 WL 4446275, at *16 (Del. Super. Sept. 23, 2022).

4

judgment."[9]  Therefore, "it is not enough that a decision be wrong.  It must result from a conscious indifference to the decision's foreseeable effect."[10]

### *Analysis*

### *Delmarva*

8.    Plaintiffs contend that the Court misapprehended the facts and the law. Plaintiffs argued that Delmarva was required by the National Electrical Safety Code ("NESC"), and applicable standards, to inspect the area around its lines at least every four years and maintain the vegetation, but it failed to do so for many years.[11]  It also failed to inspect the utility poles to which the lines were attached, which were over 60 years old and were rotting, with the top of one pole becoming detached. Delmarva knew electrical lines are dangerous and that this particular line had previously "repeated[ly come] in contact" with the tree, creating a hazard. Delmarva's only response was to do a "little bit" of trimming around the wire. Delmarva also knew that on prior occasions the condition of the electrical line caused an arcing, resulting in sparks coming from the line.  Plaintiffs' experts opined that the tree had not been properly inspected or trimmed for at least 15 years.[12]

---

[9] *Jardel Co., Inc. v. Hughes*, 523 A.2d 518, 531 (Del. 1987).
[10] *Id.* at 529.
[11] Plaintiffs incorporate their arguments from their summary judgment brief into the Motion. Motion at 1, 7-8.  Those argument have already been considered and rejected.  The Court will not address those arguments again.
[12] Motion at 4-5.

5

9. Plaintiffs contend that Delmarva could have deenergized the line or warn the tree trimmers of the dangers in working around this tree. They argue that this is not an error of judgment, but a conscience indifference and a deliberate choice to ignore its legal obligations, creating a known hazard to the tree trimmers and the residents in the neighborhood. Plaintiffs assert that the Court found this negligence was "passive" which prevented punitive damages as a matter of law.[13] Plaintiffs argue that the Court misconstrued the ruling in *Jardel v. Hughes*.[14]

10. Defendants respond that the Motion is simply a rehashing of Plaintiffs' arguments in the summary judgment phase. They contend that the Motion offers no new evidence or any viable argument that the Court misapprehended the facts or misapplied the law.

11. In the Ruling, the Court examined *Porter v. Turner*[15] and *Roberts v. Delmarva Power & Light Co.*[16] In *Porter*, the Supreme Court upheld a jury's award of punitive damages where the evidence established that a driver of a tractor-trailer, when faced with a red light for eight seconds, decided to accelerate through the intersection, subsequently hitting and killing plaintiff.[17] The *Porter* court concluded that because the driver had been faced with the red-light for so long yet still

---

[13] Motion at 6.
[14] 523 A.2d 518 (Del. 1987).
[15] 954 A.2d 308 (Del. 2008).
[16] 2 A.3d 131 (Del. Super. 2009).
[17] *Porter v. Turner*, 954 A.2d 308, 312 (Del. 2008).

accelerated through the intersection, a jury could reasonably find that the driver displayed a conscious indifference to the safety of others.[18]

12.   In *Roberts,* a manager of a Delaware regional airport noticed the lights of utility poles, that were within the airport's runway, were out.[19]   After repeated attempts to have defendants address the outage, defendants finally made repairs.[20] The defendants did not test the lights to ensure they were properly working.  Days later a pilot approaching the runway crashed into an unlit utility pole and died as a result.[21]   Plaintiffs argued that defendants' failure to inspect amounted to wantonness.[22]  The court disagreed, finding that the record only supported a finding of mere oversight, insufficient for the question of punitive damages to proceed to the jury.

13.   In the Ruling, the Court considered Delmarva's alleged failure to inspect or trim the vegetation around the lines "even for a period of years."[23]  The Court also understood Plaintiffs' position that Delmarva had a duty to inspect the lines every four years and to maintain the vegetation, as required by the NESC and applicable standards, and the Court accepted these arguments for purposes of the

---

[18] *Id.*
[19] *Roberts v. Delmarva Power & Light Co.*, 2 A.3d 131, 135 (Del. Super. 2009).
[20] *Id.*
[21] *Id.*
[22] *Id.* at 142.
[23] D.I. 555 at 6.

summary judgment motion.  The Court also considered Plaintiffs' argument that the condition of the lines, the poles, and the vegetation was a dangerous and serious situation, but ruled that alone was not sufficient to rise to the level of conscious disregard. The Motion points to no facts that the Court failed to consider in making its Ruling.  Thus, the Motion is merely rehashing arguments made during the summary judgment phase.

14.  Further, the Court did not rule that, because it found Delmarva's negligence to be passive and an error of judgment, punitive damages are barred as a matter of law.  Instead, the Court found that Plaintiffs did not satisfy their substantial burden to show a factual record to support a finding of conscience indifference or an "I don't care" attitude.

15.  Plaintiffs argue that in *Porter* the court found that the defendant's knowledge of the danger for only a few seconds was sufficient to allow punitive damages to be submitted to the jury and here, Defendants' failure spanned 15 to 60 years, amounting to conscience indifference.[24]  "Plaintiffs do not understand how *Porter* supports granting summary judgment" here.[25]  In contrast, Plaintiffs point to *Roberts* and *Estate of Rae v. Murphy,*[26] which found an insufficient factual basis for

---

[24] Motion at 9.
[25] *Id.*
[26] 956 A.2d 1266 (Del. 2008).

punitive damages, and argue that this case is not "by any measure, comparable" to the defendant's actions in those cases.

16. In *Estate of Rae*, the defendant driver, "driving slightly over the posted speed limit, simply failed to notice the red light as he approached it."[27] The court found that these "facts alone [did] not elevate the culpability of his conduct from negligence to the level of 'conscious indifference' or exhibit an 'I don't care' attitude."[28]

17. The timing of eight seconds in *Porter* was important to the ruling because after facing a red light for that period of time, the defendant took the affirmative action of driving through the red light, causing the accident. Defendants in *Roberts* and *Estate of Rae* were accused of passive negligence. On the facts in those cases, the court found that they did not rise to the level of conscious indifference. While the facts in *Roberts* and *Estate of Rae* differ from the facts in this case, that does not mean that the facts here are sufficient to sustain a claim for punitive damages. Plaintiffs simply rehash arguments they made at summary judgment. Plaintiffs' disagreement with the Court on the outcome does not amount to a misapprehension of the law.

---

[27] 956 A.2d at 1270.
[28] *Id.*

18. Defendants are accused of passive negligence and after considering the facts presented at summary judgment (including the years of failure to maintain and inspect), the Court found that Plaintiffs did not satisfy their substantial burden. The Court did not misapprehend or misapply the law. Accordingly, the Motion with respect to Delmarva is DENIED.

**Verizon**

19. Verizon owned the poles to which the electrical and communication lines were attached. Plaintiffs argue that the NESC applies to Verizon, which requires inspection of the poles every 8 to 10 years.[29] Plaintiffs presented evidence that one pole was inspected once in 1999 and a second time in 2018.[30] The other pole was never properly inspected.[31] This alone, Plaintiffs argue, is sufficient to show an "I don't care" attitude.

20. The Verizon line was in contact with the subject tree. Plaintiffs rely on a tree trimmer's testimony that "pressure" on a communication line can cause a power outage. The tree trimmer also testified that if a tree branch pulls down a communication line, it can also pull down an electrical line. Plaintiffs argue that this establishes that Verizon knew of the hazard due to its equipment not being properly maintained.

---

[29] Motion at 7.
[30] *Id.*
[31] *Id.*

21.     Again, the Motion merely rehashes the factual arguments Plaintiffs made during summary judgment.  The Court found that these facts did not satisfy Plaintiffs' substantial burden.  The Motion with respect to Verizon is DENIED.

**Comcast**

22.     Comcast's communication lines were attached to the same utility poles. Plaintiffs argue that Comcast admits that the NESC applies to it, but Comcast never performed vegetation management around this tree.[32]  Plaintiffs again rely on the tree trimmer's testimony and argues that Comcast's inaction is not a mere error of judgment but a conscious decision.

23.     The Court already considered these arguments and rejected them in the summary judgment proceeding.  The Motion with respect to Comcast is DENIED.


**IT IS SO ORDERED.**


/s/Kathleen M. Miller
Kathleen M. Miller, Judge

---

[32] Motion at 8.